IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Andrew Barrett and Richard Collier, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>Bon Secours St Francis Xavier Hospital Inc., and Care Alliance Health Services Inc.<br><br>Defendants. | CIVIL ACTION NO. 2:17-cv-02298-DCN<br><br>Collective Action Complaint<br>(Jury Trial Requested) |

Plaintiffs Andrew Barrett and Richard Collier individually (collectively "Plaintiffs"), on behalf of all others similarly situated individuals, by way of their Complaint in the above-captioned matter, allege and show unto this Honorable Court the following:

### NATURE OF CLAIM

1. This is an action for violations of unpaid overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*, (FLSA).

2. Plaintiffs bring this action as a collective action pursuant to 29 U.S.C. §216(b), individually and on behalf of other similarly situated employees of the Defendants who worked as Data Center Technicians and who suffered damages because of Defendants' violations of the FLSA.

3. Plaintiffs also bring this action for unlawful retaliation pursuant to FLSA, 29 U.S.C. § 215(a)(3) *et seq*.

**PARTIES, JURISDICTION AND VENUE**

4. Plaintiff Andrew Barrett is a resident and citizen of Dorchester County.

5. Plaintiff Richard Collier is a resident and citizen of Berkeley County.

6. Defendant, Bon Secours St Francis Xavier Hospital, is a nonprofit corporation, registered with the South Carolina Secretary of State.

7. Defendant, Care Alliance Health Services Inc is a nonprofit corporation, registered with the South Carolina Secretary of State.

8. Venue is proper in this District because the Defendants have conducted substantial, continuous and systematic commercial activities in Charleston County. Additionally, the unlawful labor practices and policies giving rise to Plaintiffs' claims were committed in the Charleston Division of this Court.

9. Plaintiffs brings this action, individually and as an opt-in collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all Data Center Technicians who worked in excess of forty (40) hours in any given work week, but who did not receive overtime compensation for such hours within the last three years.

10. This Court has jurisdiction of the state claims alleged herein, and of the FLSA claim per 28 U.S.C. § 1331, and 29 U.S.C. § 216 (b).

11. At all times pertinent to this Complaint, Defendants owned an operation and were an enterprise engaged in interstate commerce or in the production of interstate commerce as defined by the Act, 29 U.S.C. § 203(r) and 203(s).

12. The Defendants is an enterprise under which "the activities performed by any person or persons in connection with the activities of a public agency shall be deemed to be activities performed for a business purpose." 29 U.S.C. § 203(r)(2)(C).

13.     Based upon information and belief, the annual gross sales volume of the Defendant's business was more than $500,000.00 per year at all times material hereto.

**FACTS**

14.     The Defendants is a healthcare network consisting of Roper Hospital, Bon Secours St. Francis Hospital and Roper St. Francis Hospital.  It is comprised of 657-bed health system, more than 90 facilities including for profit doctors' offices.  It is comprised of an expert medical staff of over 900 doctors covering every medical specialty with services in seven counties. https://www.rsfh.com/.

15.     The Defendant, Care Alliance Health Services, Inc., doing business as Roper St. Francis Healthcare, operates hospitals that provide healthcare services to patients and their families.  The Plaintiffs' W2 were issued from this entity.

16.     The Defendants conducts activities for a business purpose, and operates with substantial competition from other hospitals, doctors' offices, emergency facilities and thus is organized for a business purpose.

17.     Plaintiff Andrew Barrett was employed by the Defendants from approximately February of 2016 until approximately April 2017.

18.     Plaintiff Richard Collier was employed by the Defendants from approximately August of 2014 until approximately April 2017.

19.     Plaintiffs were Data Center Technicians and were paid an hourly rate.

20.     Plaintiffs and those similarly situated Data Center Technicians were employed at Defendants' Data Center located on Palmetto Commerce Parkway in Charleston, South Carolina.

21.      The Data Center is large facility which contains uninterruptable power supplies; backup generators, ventilation, cooling systems and fire suppression.   The facility contains

3

information technology equipment (IT), including servers, storage subsystems, networking switches, routers and firewalls, as well as the cabling to organize, interconnect and service the Defendants' various facilities.

22. The Data Center houses computer networks for both the profit and nonprofit facilities within the Defendants' network. This includes all the Roper St Francis Hospitals, Roper Emergency Centers and the facilities that and make up Health Partners of Bon Secours St. Francis, LLC.

23. The Data Center is a multi-million-dollar facility that requires 24 hours a day, seven days a week monitoring.

24. The Plaintiffs' primary duties were to monitor the network for alerts, and address routine problems such as cooling, and restarting networks.

25. If the alerts required specialized knowledge or skill the Plaintiffs were required to notify the proper on-call Subject Matter Expert (SME) to address the issue.

26. Plaintiffs were not compensated for their thirty-minute meal breaks.

27. Plaintiffs were instructed that patient care was critical therefore they needed to respond to all alerts immediately in case it involved a network issue that affected patient care.

28. Plaintiffs rarely, got an uninterrupted meal break because they were required to respond immediately to all alerts in the facility.

29. Plaintiffs as well as other similarly situated Data Center Technicians were continuously interrupted during their meal breaks. This caused Plaintiffs and similarly situated Data Center Technicians to work more than forty (40) hours in a work week and not get paid time and half of their regular hourly rate.

30. The Data Center was staffed with Data Center Technicians twenty-four (24) hours a day, seven (7) days a week. On weekends, there were two twelve (12) hour shifts. Usually only one (1) Data Center Technician was scheduled per weekend shift to monitor the entire facility. During the week days, there were three (3), eight (8) hour shifts, usually only (1) Data Center Technician was scheduled for the 2nd and 3rd shifts.

31. According to the Defendants' policy and practice, when only one Data Center Technician was working, the Technician was restricted to the Data Center and was not relieved of duty.

32. During the weekends and 2nd and 3rd shift, Plaintiffs and other Data Center Technicians were usually NOT able to take a bona fide meal break, such that they could pursue private or personal pursuits such as relaxing or eating.

33. Plaintiffs had a work cell phone that network alerts were sent to. Plaintiffs and similarly situated Data Center Technicians were instructed to keep the phone with them during the shift and to respond immediately to all alerts within the facility.

34. It was the Defendants policy and practice, that Plaintiffs and similarly situated Data Center Technicians were required keep the work cell phone with them at all times during the shift, even during their breaks if they left the facility.

35. The break room had a phone and the Data Center Technicians were required to respond to calls to the breakroom phone.

36. When the Plaintiffs and similarly situated Data Center Technicians worked weekends and/or evening shifts, the conditions that were placed upon them during their meal breaks were so restrictive that their meal time could not be reasonably or effectively utilized for their benefit.

5

37. For example, Plaintiffs or other Data Center Technicians could only leave the facility for five (5) or (10) ten minutes to purchase food and bring their meal back to the facility to eat. They were required to take the work cell phone with them and forward all calls into the facility to that number. If Plaintiffs or other Data Center Technicians received a critical alert they were required to return to the facility immediately.

38. The Data Center Technician is a non-exempt position and does not fall within the computer exemption.

39. The Data Center Technician requires a High School diploma (or GED) from an accredited school and two years of Information Technology experience or a Associate Degree in Computer Science or Information Technology with one year of Information Technology experience on relevant equipment and systems.

40. The Plaintiffs' primary duty did NOT must consist of:

   a. The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;

   b. The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

   c. The design, documentation, testing, creation or modification of computer programs related to machine operating systems;

41. During the relevant limitations period, Plaintiffs regularly worked in excess of forty (40) hours per week, and were not compensated for time and half of their hourly wage.

42.     Plaintiffs and similarly situated Data Center Technicians regularly worked approximately an hour and an hour and half (1.5) each week without receiving overtime compensation.

43.     Defendants were advised by the Plaintiffs that their meal time was taken up principally by work responsibilities so much so that it prevented Plaintiffs from comfortably relaxing during their meal break.

44.     It was the Defendants policy and practice, to require the Data Center Technicians to respond to all alerts; have the work cell phone with them during their meal break and to take their meal break in the facility during weekend and/or evening shifts in case they were needed to respond to an alert.

45.     Plaintiff Barrett and Plaintiff Collier complained verbally to their supervisors that they were frequently working through their lunch and not getting compensated.

46.     Plaintiff Collier raised the issue in a staff meeting.

47.     Defendants retaliated against Plaintiffs by terminated them because they complained about not being paid for the time the spent working during their uncompensated meal breaks.

48.     Plaintiffs were terminated for "stealing time" because they left Data Center to purchase their meal and did not clock out.   Plaintiffs left the facility for a short time and returned to eat their meal, they forwarded all calls to the work cell phone and they brought the work cell phone with them when they left the facility.

49.     Plaintiffs' complaints to the Defendants was sufficiently clear and detailed for the Defendants to understand the nature of the complaints and that it constituted protected activity under the FLSA's anti-retaliation provision.

50. The Defendants had fair notice that Plaintiffs' complaints were protected activity. Plaintiffs were terminated because they complained to the Defendants about wage theft.

51. At all times relevant to this Complaint, Plaintiffs were good and faithful employees of Defendants and they performed the essential functions of the job in an exceptional and competent manner.

**FOR A FIRST CAUSE OF ACTION**
(Fair Labor Standards Act–Failure to Pay Overtime Wages)
(Individual and Collective Action)

52. Plaintiffs, on behalf of themselves and all other similarly situated employees, realleges and incorporates by reference all preceding paragraphs as if specifically set forth herein.

53. Plaintiffs and the members of the Plaintiffs' class were employees of Defendants for purposes of the Fair Labor Standards Act during times relevant to this Complaint.

54. Defendants failed to pay Plaintiffs and the members of the Plaintiffs' class at the rate of one-and-a-half times their normal rate of pay for all hours worked in excess of forty (40) hours per work week as required by section 7(a) of the FLSA, 29 U.S.C. § 207(a).

55. Defendants also failed to pay Plaintiffs and the members of the Plaintiffs' class for all compensable time for which Plaintiffs provided work for the benefit of Defendants.

56. Plaintiffs and the members of the Plaintiffs' class are entitled to back wages at the rate of one-and-a-half times their regular rate of pay for all overtime hours worked in excess of forty (40) hours per week, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

57. Plaintiffs and the members of the Plaintiffs' class are also entitled to an award of back pay at their regular hourly rate or their overtime rate, as appropriate, as appropriate

compensation for all time spent in working for Defendants, which was wrongfully excluded by Defendants in calculating their compensable time.

58. The failure of Defendants to compensate Plaintiffs for overtime work and the time they spent working during their interrupted meal break was knowing, willful, intentional, and done in bad faith.

59. Plaintiffs and the members of the Plaintiffs' class are also entitled to liquidated damages equal to the amount of overtime compensation and unpaid compensation due to them under the FLSA, pursuant to section 16(b) of the FLSA, 29 U.S.C. § 216(b).

60. The work and pay records of Plaintiffs and the members of the Plaintiffs' class are in the possession, custody, and/or control of Defendants, and Defendants is under a duty pursuant to section 11(c) of the FLSA, 29 U.S.C. § 211(c), and pursuant to the regulations of the United States Department of Labor to maintain and preserve such payroll and other employment records from which the amount of Defendants' liability can be ascertained.

61. Plaintiffs requests an order of this Court requiring Defendants to preserve such records during the pendency of this action.

62. Plaintiffs are also entitled to an award of reasonable attorney's fees and costs incurred in prosecuting this action, pursuant to 29 U.S.C. § 216(b).

**FOR A SECOND CAUSE OF ACTION**
(Fair Labor Standards Act–Retaliation)
(Individual)

63. Plaintiffs, on behalf of themselves and all other similarly situated employees, realleges and incorporates by reference all preceding paragraphs as if specifically set forth herein.

64. On various occasions throughout Plaintiffs Barrett and Colliers employment, they verbally complained about pay practices of Defendants that were unlawful under the FLSA.

65. Defendants did nothing to rectify the wage and hour violations that Plaintiffs complained about herein.

66. Plaintiffs Barrett and Collier engaged in "protected conduct" by complaining about the FLSA violations.

67. As a result of engaging in protected activity, Plaintiffs Barrett and Collier suffered adverse employment action.

68. Defendants willfully, intentionally, and unlawfully retaliated against Plaintiffs by terminated them because they verbally complaint to their supervisors about violations of the FLSA.

69. Defendants is liable for the acts of individual supervisors, managerial employees, and/or the acts of their agents.

70. Defendants is subject to individual liability pursuant to 29 U.S. C. §§203(e)(l) and 215(a)(3) for the retaliatory conduct.

71. Defendants retaliated against Plaintiffs, as a result of their protected conduct.

72. Defendants willfully violated the anti-retaliation provisions of the FLSA, which prohibit "any person" from "discharging or in any other manner discriminating against an employee because that employee has engaged in protected conduct." 29 U.S.C. § 215(a)(3).

73. As a result of, Defendants' willful violations of the FLSA, Plaintiffs are entitled to recover from Defendants for front-pay, back-pay, emotional distress, reasonable attorneys' fees and costs/disbursements of prosecuting this case, plus liquidated damages, and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and similarly situated employees who join this action demand:

a) Designation of this action as a collective action on behalf of the FLSA collective class pursuant to 29 U.S.C. § 216 (b);

b) Judgment against Defendants for an amount equal to Plaintiffs' unpaid back wages at the applicable overtime rates;

c) Judgment against Defendants that their violation of the FLSA and its implementing regulations were willful;

d) Liquidated damages in an amount equivalent to the overtime damages owed to Plaintiffs;

e) Leave to add additional Plaintiffs by motion, the filing of written consent forms; or any other method approved by the Court;

f) Leave to amend to add other Defendants who meet the definition of Plaintiffs' employer, 29 U.S.C. § 203(d);

g) Injunctive relief to require Defendants to record, report and preserve records sufficient to enable Plaintiffs and similarly-situated employees to determine their wages, hours and conditions and practices of employment, including practices regarding deductions and payment and nonpayment of overtime as mandated by the FLSA.

h) As a result of, Defendants retaliating against the Plaintiffs in violation of the FLSA, Plaintiffs are seeking to recover from Defendants for front-pay, back-pay, emotional distress, reasonable attorneys' fees and costs/disbursements of prosecuting this case, plus liquidated damages, and post-judgment interest;

i) Attorneys' fees and costs; and

j) All such further relief as the Court deems just and equitable.

11

**JURY DEMANDED**

Plaintiffs Barrett and Collier on their behalf and on behalf of all other similarly situated Data Center Technicians hereby demands a trial by jury.

Respectfully submitted,

s/ Marybeth Mullaney
Marybeth Mullaney (Fed. ID No. 11162)
Mullaney Law
1037-D Chuck Dawley Blvd, Suite 104
Mount Pleasant, South Carolina 29464
(800) 385-8160 Phone & Fax
marybeth@mullaneylaw.net

*Attorney for Plaintiffs*

August 27, 2017